**LAPATA et al., Appellants,**

**v.**

**PROGRESSIVE CASUALTY INSURANCE COMPANY et al., Appellees.**

[Cite as *Lapata v. Progressive Cas. Ins. Co.* (1992), 79 Ohio App.3d 65.]

Court of Appeals of Ohio,
Sandusky County.

S–91–11.

Decided March 31, 1992.

**66**

*Michael T. Murray,* for appellants.

*Mark P. Prajsner* and *Anne Koester,* for appellee Hasselbach & Paul Agency, Inc.

*John A. Coppeler,* for appellee Progressive Casualty Insurance Company.

SHERCK, Judge.

This is an appeal from a grant of summary judgment issued by the Sandusky County Court of Common Pleas which upheld an insurance company's denial of underinsured motorist coverage to its insured. We reverse the decision of the trial court and, in so doing, find policy language that requires an insured to make an underinsured arbitration demand within one year of the accident to be unreasonable.

In June 1987, appellant Monica Lapata needed automobile insurance. Lacking experience in such matters, she sought guidance from her father. Appellant's father contacted his old acquaintance, Leonard Hammersmith, an agent for appellee Hasselbach & Paul Agency, Inc. Hammersmith recalled that there was a telephone conversation between himself and appellant's father. However, he was unable to recall the substance of the conversation. Appellant's first contact with appellee came when her father told her to go to the office of appellee Hasselbach & Paul to "sign the papers." Appellant went to appellee's office, introduced herself to a receptionist and was sent to a back office. There, she was presented with an application form that had already been completed. The man in the office, who appellant could not identify, merely showed appellant where to sign the form. There was no discussion about uninsured or underinsured motorist coverage. Appellant did not recall any other conversation with the man she met at Hasselbach & Paul concerning the details of her coverage. She testified, however, that the signature appearing in the section of the application concerning uninsured motorist coverage was not her signature. According to appellant, her meeting was brief and, in fact, she was not even made aware of what company would issue the policy until much later when she received bills from appellee Progressive Casualty Insurance Company.

Appellee Hasselbach & Paul caused a policy to be issued by appellee Progressive to appellant. The policy provided for liability insurance limits of $25,000 per injured person. By virtue of R.C. 3937.18, the insurer was required to offer appellant underinsured motorist insurance with a corresponding limit of $25,000 per injured person. The policy that was issued included uninsured and underinsured motorist insurance, but with limits of only $12,500 per person. However, in the summary judgment proceedings held before the trial court, appellant presented evidence tending to show that her signature on the application form requesting the lower limits was forged.

The material facts that give rise to appellant's cause of action and subsequent appeal are set forth as follows. On July 15, 1988, appellant was riding on a motorcycle when she was injured as a result of a collision with an

automobile.[1]  The driver of the car was insured by Globe Insurance Company. Appellant retained counsel shortly after the accident.  In April 1989, appellant's counsel contacted Globe and demanded settlement.  On June 6, 1989, Globe informed appellant's counsel that its insured had a liability limit of $12,500.  Globe offered to pay that amount.  Appellant's damages allegedly exceeded that amount, thus triggering her claim for underinsured motorist coverage.

On July 20, 1989, more than one year after the accident, appellant's counsel contacted appellee Hasselbach & Paul and advised it that appellant had been injured by an underinsured motorist.  In August 1989, appellee Progressive contacted appellant's counsel and informed him that appellant's underinsured motorist insurance had a limit of $12,500.  A copy of the policy, declarations and application was sent to appellant's counsel.  Progressive's representative also indicated that there would be no coverage because the contract required appellant to make a demand for arbitration under the underinsured motorist clause within one year of the accident.  The policy's arbitration clause is pertinent only to the section of the policy dealing with uninsured/underinsured coverage.  The remaining sections of appellant's policy concerning liability and property damage coverage did not include the provision requiring the demand for arbitration.

In September 1989, appellant reviewed the documents forwarded from Progressive and discovered the alleged forgery.  Appellant demanded the $25,000 underinsured coverage payment less the $12,500 setoff.  Appellee Progressive refused the demand.  Appellant filed suit against appellees Progressive and Hasselbach & Paul Agency, alleging that an employee of Hasselbach & Paul, acting as an agent for Progressive, forged appellant's signature, causing the denial of coverage.

Following discovery, appellees moved for summary judgment.  The trial court held that the alleged forgery was irrelevant because appellant could not have recovered even if the policy had the higher underinsured limits, since appellant failed to demand arbitration within one year of the accident.  This appeal followed.  Appellant sets forth the following assignment of error:

"I.  The trial court erred in granting summary judgment in favor of appellees.

"A.  The trial court erred in granting summary judgment in favor of appellees based on the appellant's failure to demand arbitration within one

---

**1.**  The claims of the motorcycle driver, William Strong, were voluntarily dismissed.  The only remaining plaintiff was appellant.

year of the accident as said policy terms are unreasonable and create a condition precedent which appellant herein could not reasonably meet.

"B. The trial court erred in granting summary judgment in favor of appellees based on the notion that appellant could not prove any damages. Appellant could recover any damages sustained which proximately resulted from appellees' fraudulent conduct, and if none were proven and appellant proved her case, appellant could at least recover nominal damages."

This case is before us upon a summary judgment. The standards for summary judgment are well known. The party seeking summary judgment must show:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party who is requesting a summary judgment." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

Appellee, as the moving party, bears the initial burden of demonstrating that there is no genuine issue of any material fact. *Harless.* However, the moving party may sometimes meet this burden by pointing out to the court that there is no evidence to support the plaintiff's claims. The moving party thereby forces the nonmoving party to produce evidence on any issue for which that nonmoving party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. The moving party need only point out which element is not supported. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–801.

I

In the first portion of her assignment of error, appellant asserts that the policy's term requiring appellant to make an arbitration demand within a year is unenforceable as unreasonable. Appellant argues that an injured party cannot reasonably be expected to discover the insurance limits of the tortfeasor within one year and discovery of the claim for underinsured motorist coverage is a condition precedent to demanding arbitration.

The policy before us has three pertinent provisions: (1) the insurer has no obligations under the underinsured motorist coverage until the insured has exhausted the tortfeasor's liability insurance through payments or offers to pay judgments or settlement; (2) the insurer shall have no obligations unless the insured complies with all the terms of the contract; (3) the insured is required to demand arbitration within one year of the accident. Under the terms of this policy, then, the injured party whose one-year deadline is approaching has a choice: make a demand for arbitration before exhausting the limits of the tortfeasor's liability insurance, or let the time period pass and hope that the tortfeasor is not underinsured. Appellant's position is that this Hobson's choice makes the one-year period for demanding arbitration unreasonable and unenforceable.

Parties to an insurance contract may include terms contrary to the relevant statute of limitations if the language of the contract is clear and unambiguous and if the shortened period is reasonable. *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 23 O.O.3d 281, 432 N.E.2d 167. A one-year limitations period in an uninsured motorist policy is reasonable as a matter of law. *Duriak v. Globe Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 28 OBR 168, 502 N.E.2d 620. The one-year period may also be allowable in the case of underinsured motorist coverage. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488. However, the instant case is distinguished from *Lane* in that *Lane* considered only the effect of an ambiguous limitations clause; it did not mention any additional requirements imposed by the contract. That is, there was no mention of any clause requiring a demand for arbitration within one year of the accident. *Lane* thus stands for the proposition that a clause requiring the filing of a suit within one year in order to enforce an underinsured motorist policy may be allowable. It is not directly applicable to the case before us.

Other courts have considered insurance policies more akin to the instant policy. In *Worley v. Ohio Mut. Ins. Assn.* (1991), 76 Ohio App.3d 531, 602 N.E.2d 416, a one-year period during which the insured must exhaust the tortfeasor's policy limits and demand arbitration was held to be unreasonable in an underinsured motorist insurance case. Accord *Cook v. Ohio Mut. Ins. Assn.* (May 29, 1990), Clermont App. No. CA89–09–081, unreported, 1990 WL 70931. In the instant case, as in *Worley*, the insured would be required to (1) determine if the tortfeasor had coverage, (2) convince the tortfeasor's insurer to surrender a negotiating advantage by revealing the limits of the policy, (3) establish the tortfeasor's liability and reach a settlement with the tortfeasor's insurer for the policy limits, (4) determine that the injuries suffered at the hands of the tortfeasor are not fully compensated by the settlement, (5) seek

an agreement with her own insurer, and (6) demand arbitration. Requiring all of the above to be accomplished within one year is unwarranted.

We agree with the *Worley* court and the *Cook* court. The provision requiring that the insured demand arbitration within one year of the accident date as a condition precedent to triggering the insurer's obligation is unreasonable. The insured is required by the clause to obtain information concerning the tortfeasor's liability limits from members of the insurance industry. Those insurers are understandably reluctant to provide that information until compelled to do so. We do not wish to encourage the filing of lawsuits just to obtain information concerning a tortfeasor's insurance limits through discovery. Enforcement of the clause would have that result. Further, we fail to see any prejudice accruing to appellees as a result of our decision. Appellees remain fully able to assert their defenses to this claim. Accordingly, appellant's assignment of error is well taken.

## II

In the second argument in support of her assignment of error, appellant asserts that there is sufficient evidence of an independent tort by appellees to avoid summary judgment. The tort asserted by appellant is based upon the forgery. This court has previously held that a complaint states a claim if the complainant alleges forgery to the detriment of the complainant. *Oakley v. Etchen–Lutz Co.* (1941), 70 Ohio App. 283, 25 O.O. 41, 45 N.E.2d 791. The related tort of fraud also includes detrimental reliance as an element of the prima facie case. *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. Because our holding in Section I of this opinion reverses the grant of summary judgment and allows appellant to go forward with her claim for underinsured motorist coverage, we determine that appellant has presented no evidence that she has suffered any detriment.[2] Accordingly, appellant's second argument in support of her assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining. The summary judgment issued by the Sandusky County Court of Common Pleas is reversed. This case is remanded for further proceedings not inconsistent with this opinion. It is ordered that appellees pay the costs of this appeal.

*Judgment reversed.*

---

2. However, we take note of *Hoeper v. Progressive Cas. Ins. Co.* (Aug. 5, 1991), Clermont App. No. CA90–06–063, unreported, 1991 WL 149554 (independent tort of breach of duty of good faith by forgery of uninsured motorist waiver form properly pleaded and argued).

ABOOD, J., concurs.

RESNICK, J., concurs separately.

MELVIN L. RESNICK, Judge, concurring.

I concur with the majority and stress the basic unfairness of a one-year limitation clause for uninsured or underinsured motorist coverage whether it be by demand for arbitration or suit against the company. As stated in the dissent in *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 301, 23 O.O.3d 281, 286, 432 N.E.2d 167, 172:

"The purpose of uninsured motorists coverage and of R.C. 3937.18 is to put the insured in the same position he would have had if the tortfeasor carried liability insurance."

Diminishing the time an insured has under the law places an insured in a substantially different position than he would have been had the tortfeasor carried the required insurance coverage. The one-year limitation in the policy is a dilution or diminution of the uninsured motorist statute and defeats the intent and purpose of the statute. Therefore, in this writer's mind it is clearly against public policy.

Moreover, when the insurance company promises to pay the insured what "he is legally entitled to recover" from the tortfeasor, that legal entitlement must of necessity include the time the insured has to seek recovery from the tortfeasor. Finally, in these days when banks and insurance companies are increasingly becoming insolvent, what happens to an insured with underinsured and uninsured coverage when the tortfeasor's insurance carrier becomes insolvent subsequent to the one-year provision? The answer is obvious and demonstrates the unjustifiable nature of the one-year provision.